# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**STEPHANIE PARKER,**

    **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　　　　Case No.  8:10-cv-1635-T-30TBM

**SYNIVERSE TECHNOLOGIES, INC.,**

    **Defendant.**

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant Syniverse Technologies, Inc.'s Motion for Summary Judgment (Dkt. 24) and Plaintiff Stephanie Parker's Response in opposition (Dkt. 31).  The Court, having considered the motion and response, and being otherwise advised, concludes that the motion should be denied in part and granted in part.

### Background

Plaintiff filed this action bringing one count for recovery of overtime compensation against Defendant Syniverse Technologies, Inc., her former employer.  Plaintiff alleges that although Defendant classified her position as exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, she performed non-exempt job duties that entitled her to overtime compensation for hours worked over forty per week.

Defendant is a technology based company that provides mobile connectivity to mobile customers.  Defendant has a complex system of hardware and software which connects cell

phone users throughout the world. Most mobile operators, such as Cingular, Verizon, T-Mobile, and AT&T, do not directly connect with each other. Instead, Defendant provides a service of acting as a hub to enable various mobile operators to communicate with each other, allowing the customers of different carriers to communicate directly. One of the systems which performs this function is called Integrated Services Digital Network User Part ("ISUP").

Plaintiff was employed by Defendant from 1997 to 2009. From 2005 until December 2009, Plaintiff worked as a Senior Network Provisioner. In this position, Plaintiff was paid a salary of approximately $50,000 per year. Network provisioners assist customers to enable them to send signals from one point to another, generally from a point within the customer's network to another wireless provider's network. Customers send in orders with signal source and the signal destination information, known as point codes. Plaintiff would receive those orders and input point codes into the Syniverse computer system. Plaintiff utilized a routing table to determine whether point codes already existed in the system. If both point codes were already in the system, the connection could be made between the customer's network and the destination provider's network and the ISUP route could be created. If one of the point codes was not already in the system, Plaintiff had to first verify with the customer that the point codes were correct. If the codes were correct, the new code had to be entered into the system.

Plaintiff's work as a Senior Network Provisioner included "rehomes." A rehome project consisted of receiving a request from a customer and rerouting of the network between two carriers so they would be able to communicate. Rehomes were similar to individual orders but could be more complex and could involve thousands of point code changes.

Beyond the basic description of Plaintiff's job, the parties disagree on the details of Plaintiff's job responsibilities.

### A.   Defendant's Description of Plaintiff's Job Responsibilities

According to Plaintiff's supervisor, Trevor Hurst, a Senior Network Provisioner is responsible for designing and provisioning ISUP routes to and from the SS7 Hub/System so that messages can be sent from one carrier to another through signaling companies and adjacent networks. Hurst Decl. ¶ 3. Designing and provisioning ISUP routes is an engineering function that requires a Provisioner to develop a path whereby an originating point code and destination point code can communicate with each other. Id. at ¶ 5. Customers contract with Defendant to use Defendant's SS7 Hub and ISUP signaling. Id. Plaintiff's job was to provide a route to deliver this service. Id.

The first step in designing, provisioning, and routing ISUP is to analyze a customer's order request to determine how to design a route and validate the information. Id. at ¶ 6. Plaintiff would interpret the point code and make certain that both the originating point code and destination code were compatible, which involves analyzing the system and considering

various alternatives to determine whether conflict exists. Id. Plaintiff may also have been required to research routing issues to identify how conflicts may be corrected. Id.

After receiving an order from a customer, Plaintiff would design and provision routes to ensure symmetrical routing of customer ISUP traffic with third party hub providers and local exchanges, placing orders between carriers to ensure that a network is established between two parties. Id. at ¶ 7. There are many options available when trying to route or place an order. Id. Plaintiff had to use judgment to determine what regional providers to use in deciding what orders must be placed, including considering possible complications of the placement. Id. When working on a rehome project, Plaintiff would be required to analyze the options, determine the best route for the communication between carriers to occur, and design the ISUP route so that the communication would work. Id. at ¶ 13. Designing ISUP routes is complex engineering work and requires the exercise of discretion and independent judgment. Id. at ¶ 11. Plaintiff had to have knowledge as to how placing a route would affect other customers. Id.

Plaintiff also had to ensure that the instructions to the local provider were correct. Id. at ¶ 10. If the information was incorrect, it could have prevented the carrier's subscribers from being able to roam another carrier's network, thereby effectively shutting down a carrier's ability to do business. Id.

Plaintiff performed these job duties on her own without day-to-day supervision. Id. at ¶ 16. Plaintiff had access to a work instruction document which provided a rough

overview of the steps that needed to be performed in order to ensure a particular job was complete. Id. at ¶ 15. That instruction sheet however did not provide detailed step-by-step instructions. Id. The routing table used by Plaintiff contained information relating to highly technical, complex matters that can be understood or interpreted only by those with advanced or specialized knowledge or skills. Id. Plaintiff could complete orders from customers without specific review of the orders by her supervisor. Id. at ¶ 16.

**B.     Plaintiff's Description of Her Job Responsibilities**

Plaintiff states her primary job responsibility was to assist customers in sending signals from one point to another. Parker Decl., ¶ 8. To accomplish that task, Plaintiff would first receive an order from the customer with the customer's switch point code and a request to connect to another provider. Parker Depo. p. 14. Plaintiff would then process the order if the routing table showed existing routing to the other provider. Parker Decl., ¶ 11. Processing the order required Plaintiff to contact an engineer and request that the engineer activate the route between the given point codes. Parker Depo., p. 15.

If the point codes were not already in the system, Plaintiff was tasked with verifying the information provided with the customer. Id. at p. 26. Once it was clear that the information was correct, the engineer would input the point codes into the system and activate the route, if appropriate. Id. at pp. 15, 22, and 25. Simply, Plaintiff "would look at the information the customer provided and check the routing table for that point code to see how it came into the system." Id. at p. 22.

"Anytime the routing table was different from the customer's request, the customer was contacted." Parker Decl., ¶ 18. If the customer needed routing assistance to determine how to route a new point code or if the customer did not know how the order was routed, the issue would be submitted to the engineer assigned to that order. Id. at ¶¶ 18-19. The engineer would actually determine how the signal would be routed. Id. at ¶ 20.

Sometimes when there was a routing conflict, a rehome would need to be scheduled to move the customer's traffic to a different switch. Id. at ¶ 16. According to Plaintiff, rehomes were first assigned to engineers, who would verify the information submitted by the customer. Parker Depo., p. 79. The engineer would then send the information, including the proper routing, to Plaintiff in a spreadsheet. Id. at pp. 79-80. At that point, Plaintiff would "either upload the spreadsheet for the customer, if they had not put it in individually, or [Plaintiff] would send the order to the LEC [local exchange carrier]." Id. at p. 80. When Plaintiff received the spreadsheet from engineering, she was tasked with "making sure the customer had all the routes, seeing if there were other routes that perhaps they didn't include, adding more routes or correcting perhaps [sic] typographical errors they made, making those changes in the system if there was an error, sending the order to the LECs, making sure they were on schedule time-wise with the engineer, communicating to the customer the update from the engineer or if the engineer found other routes, going back to the customer." Id. at p. 82. She might ask the customer: "This is the information we're getting. Are you also moving these additional routes?" Id. Plaintiff worked closely with the engineer assigned to

the specific rehome. Id. at p. 84. The engineer told Plaintiff how the rehome would be routed and input the information into the system to make the connection work. Id. at p. 84-85.

In many cases, project managers were assigned to rehome projects to keep track of scheduling and assist customers in a variety of ways. About 55% of the rehomes did not have a project manager assigned to it. Id. at p. 106. On those occasions, Plaintiff would be the one coordinating communication and doing whatever scheduling needed to be arranged. Id.

Plaintiff asserts that she was provided with a "lengthy document that provided a road map with instructions to follow in most situations." Parker Decl. at ¶ 23. She would use the document's flow chart frequently until the work became routine. Id.

## Summary Judgment Standard

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action

will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

**Discussion**

The FLSA requires that, subject to certain exemptions, employers pay employees time and one half for hours worked beyond 40 hours in a week. 29 U.S.C. §207(a)(1). Defendant seeks summary judgment arguing that Plaintiff was exempt from the requirements of the FLSA under the computer professional exemption or the administrative professional exemption. 29 U.S.C. §§ 213(a)(1) and 213 (a)(17). The employer bears the burden of proving an exemption and the Court narrowly construes the overtime provisions of the FLSA against the employer. *Hogan v. Allstate Ins. Co.*, 361 F.3d 621, 625 (11th Cir. 2004).

## I. Computer Professional Exemption

Under the FLSA, the overtime compensation requirements do not apply to "any employee who is a computer systems analyst, computer programmer, software engineer, or other similarly skilled worker, whose primary duty is--

> (A) the application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications;
> (B) the design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;
> (C) the design, documentation, testing, creation, or modification of computer programs related to machine operating systems; or
> (D) a combination of duties described in subparagraphs (A), (B), and (C) the performance of which requires the same level of skills, and who, in the case of an employee who is compensated on an hourly basis, is compensated at a rate of not less than $ 27.63 an hour."

29 U.S.C. § 213(a)(17).

As noted in the background section, Plaintiff's job responsibilities are in dispute. Defendant asserts that Plaintiff applied systems analysis techniques and procedures, including consulting with users to determine system functional specifications, by using her analytical skills to determine and design the proper routing, and designing and provisioning routes for ISUP traffic. Defendant also contends Plaintiff had to rely on her specialized knowledge and could not simply look at a table or manual to determine the proper routes or resolve conflicts.

In contrast, Plaintiff says she merely verified routing information with the customer to determine whether the point codes existed within the Syniverse system. She claims that if codes needed to be added or routes designed, the engineer would complete that task.

Defendant claims Plaintiff analyzed existing routes and created new routes, which Defendant argues falls within Section 17(B). Plaintiff, however, contends she simply verified the point codes with the customer and the engineers created the new routes. Defendant also asserts that Plaintiff "issued letters of authorization to customers and third party providers and sent completion notices to customers, which involved documenting computer systems based on and related to user or system design specifications." Dkt. 24, p. 13. But Plaintiff contends that the letters of authorization simply showed the customer the method of routing and related billing information.

Defendant argues that when Plaintiff received a customer request, she analyzed the options and determined the best route for the communication and that such a task involved

the design, documentation, testing, creation, or modification of computer programs related to machine operating systems. Plaintiff, on the other hand, asserts that she simply confirmed the information provided by the customer. If the customer needed assistance to determine how to route a new point code, an engineer was contacted for assistance.

Defendant fails to provide undisputed evidence showing that Plaintiff was an exempt employee under the computer professional exemption. In addition to the fact that Plaintiff disputes almost every detail of her job responsibilities, Defendant relies on conclusory statements that its version of Plaintiff's job duties fell under the computer professional exemption. It remains unclear from the record whether Plaintiff's job actually falls within the computer professional exemption and the disputed issues will have to be decided by a fact finder.

## II.     Administrative Professional Exemption

The FLSA also exempts employees working in a bona fide administrative capacity. 29 U.S.C. § 213. The Secretary of Labor defines an administrative employee as an employee:

> (1) Compensated on a salary or fee basis at a rate of not less than $ 455 per week (or $ 380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200.

Plaintiff's salary was more than double the salary requirement in subpart (1) and Plaintiff does not dispute that the salary requirement is met. The parties dispute whether the other two criteria are met.

The Code of Federal Regulations clarifies the second requirement that the employee's work was directly related to the management or general business operations of the employer or the employer's customers as follows:

> (a) To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers. The phrase 'directly related to the management or general business operations' refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.
>
> (b) Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Some of these activities may be performed by employees who also would qualify for another exemption.
>
> (c) An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers. Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt.

29 C.F.R. § 541.201.

Defendant apparently argues that Plaintiff's work was directly related to assisting with the running or servicing of the business because her job duties are specifically identified in the regulations in section (b), i.e., quality control, research, computer network, and internet and database administration. Plaintiff disputes Defendant's characterization of her job duties. Rather, Plaintiff asserts that her job duties were more akin to "production," which is specifically excluded under the regulation.

First, the regulations are clear that an employee who would be exempt under the administrative exemption must do work related to the internal functioning of either the business or the customer's business. There is a disputed issue of fact whether Plaintiff's job duties related to the actual running of Defendant's business.

According to Plaintiff, her job duties related to providing the service to customers that Defendant was in the business of providing. Defendant's business is providing a platform for mobile operator services to use as a hub for cell phone roaming. Hurst Depo., p. 6. Defendant appears to contend that the "product" sold to customers was a telecommunications system, which was clearly not designed in any part by Plaintiff. Plaintiff's job, according to Defendant, was to analyze and create ways for customers to access that system.

"In a service industry, production activities relate to the 'primary service goal' of the entity." *Cotten v. HFS-USA, Inc.*, 620 F. Supp. 2d 1342, 1348 (M.D. Fla. 2009) (citing *Smith v. City of Jackson, Miss.*, 954 F.2d 296, 299 (5th Cir. 1992)). Defendant's primary service

goal was to provide access to their telecommunications system. Arguably, and viewed in the light most favorable to Plaintiff, Plaintiff's job was only to assist customers in routing signals from point A to point B by accessing Defendant's telecommunications system.

Because all three criteria delineated in 29 C.F.R. § 541.200 must be met in order for Plaintiff's job to have been exempt, the Court need not analyze whether Plaintiff's primary duties included the exercise of discretion and independent judgment with respect to matters of significance. Defendant has failed to meet its burden of proving that Plaintiff's job was exempt under the administrative professional exemption.

## III.     Statute of Limitations

The "statute of limitations for claims seeking unpaid overtime wages generally is two years, but if the claim is one 'arising out of a willful violation,' another year is added to it." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.,* 515 F.3d 1150, 1162 (11th Cir. 2008) (quoting 29 U.S.C. § 255(a)). "To establish that the violation of the Act was willful in order to extend the limitations period, the employee must prove by a preponderance of the evidence that his employer either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was." *Id.* at 1162-63 (citing *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988)).

As defined by the Code of Federal Regulations, "reckless disregard" is the "failure to make adequate inquiry into whether conduct is in compliance with the Act." Id. at 1163 (quoting 5 C.F.R. § 551.104). The "three-year statute of limitations may apply even when

the employer did not knowingly violate the FLSA; rather, it may apply when it simply disregarded the possibility that it might be violating the FLSA." *Allen v. Bd. of Public Ed.,* 495 F.3d 1306, 1324 (11th Cir. 2007). "If an employer acts unreasonably but not recklessly in determining its legal obligation under the FLSA, then its actions should not be considered willful and the two-year statute of limitations should be applied." *Id.* (citations omitted).

Defendant argues the two year statute of limitations should apply because there is no evidence that Defendant knew its conduct was prohibited by the FLSA or that it showed reckless disregard about whether it was violating the FLSA. The Court agrees with Defendant's argument. There is simply no evidence in the record, and Plaintiff provided no evidence in rebuttal, that Defendant acted recklessly in determining its legal obligations under the FLSA. Summary judgment is granted as to the application of the two year statute of limitations.

Finally, Defendant contends that by applying the two year limitations period as requested, Plaintiffs claim is barred because she is "seeking damages commencing January 11, 2008." Dkt. 24, p. 22. According to Plaintiff's Answers to the Court Interrogatories (Dkt. 10), Plaintiff seeks damages for unpaid overtime for the period from January 11, 2008 through December 11, 2010. Under the continuing violations doctrine, "[a] cause of action under the FLSA for unpaid overtime accrues at the end of each pay period in which the employer fails to pay overtime to which the employee is entitled." *Love v. Phillips Oil, Inc.*, 2008 U.S. Dist. LEXIS 102366 (N.D. Fla. Dec. 9, 2008) *(*citing *Knight v. Columbus, Ga.*, 19

F.3d 579, 581 (11th Cir. 1994)).  Therefore Plaintiff's claim is not fully barred under the two year statute of limitations.  She may receive damages for any claim which accrued within the two year time period.

## Conclusion

Defendant has failed to meet its burden of proving that Plaintiff's job was exempt from the FLSA overtime compensation requirements.  Even though Plaintiff's job certainly seems complex, that issue remains for a jury to decide.  It is therefore ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (Dkt. 24) is DENIED in part and GRANTED in part as stated herein.

**DONE** and **ORDERED** in Tampa, Florida on August 1, 2011.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2010\10-cv-1635.msj 24.frm